# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS A. MURRAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 04 C 7669 |
| | ) |
| INDYMAC BANK, F.S.B., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant IndyMac Bank, F.S.B.'s ("IndyMac") motion for summary judgment and Plaintiff Thomas A. Murray's ("Murray") cross-motion for summary judgment. For the reasons stated below, we grant in part and deny in part the motions for summary judgment.

## BACKGROUND

Murray claims that IndyMac unlawfully accessed the credit reports of numerous Illinois consumers for the purpose of sending them letters offering a mortgage loan. Murray alleges that he received such a letter ("Letter") in October, 2004, which stated: "Information from a consumer report was used in conjunction

1

with this offer." (A. Compl. Ex. A). The Letter allegedly further stated: "This offer has been extended based upon information from this consumer credit report which indicates that you meet certain criteria for the offered credit." (A. Compl. Ex. A). According to Murray, IndyMac initiated obtaining Murray's consumer credit report and the Letter from IndyMac does not contain a firm offer of credit and therefore is in violation of the Fair Credit and Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. Murray also argues that the Letter does not include certain required disclosures in a clear and conspicuous manner as is required under the FCRA. Furthermore, Murray contends that IndyMac's actions were done willfully in violation of 15 U.S.C. §1681b of the FCRA. IndyMac and Murray have each filed a motion for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial

burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

## DISCUSSION

IndyMac argues that the court can find as a matter of law that the Letter

3

contained a firm offer of credit and contends that the Letter made the required disclosures in a clear and conspicuous manner. IndyMac also argues that even if it did violate the FCRA, the court should find as a matter of law that it did not willfully violate the FCRA. Murray argues that the court should find as a matter of law in his favor on all of the arguments advanced by IndyMac.

## I. Whether the Letter Contained a Firm Offer of Credit

Murray contends that the Letter did not contain a firm offer of credit. Under the FCRA, in regards to a loan transaction that is not initiated by a consumer, a loan solicitor can obtain a consumer's credit information from a consumer credit reporting agency only if the loan solicitation includes a "firm offer of credit." 15 U.S.C. § 1681b(c)(1)(B)(I). The FCRA defines the term "firm offer of credit" as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." *Cole v. U.S. Capital*, 389 F.3d 719, 726 (7th Cir. 2004)(quoting 15 U.S.C. § 1681a(l)). The FCRA provides that a "firm offer of credit" can only be conditioned upon: 1) "additional pre-selected criteria bearing on the consumer's creditworthiness," 2) "verification 'that the consumer continues to meet the specific criteria used to select the consumer for the offer,'" and/or 3) the "consumer's furnishing any collateral that was both established before the selection of the consumer for the offer and disclosed to the consumer in

4

the offer." *Id.*

In assessing whether a solicitation contained a firm offer of credit, "a court must consider the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question." *Cole*, 389 F.3d at 727-28 (emphasis in original). Also, in order for a solicitation to be a firm offer of credit, the solicitation must "have sufficient value for the consumer to justify the absence of the statutory protection of his privacy." *Id.* at 726. Factors that a court can consider in determining whether a solicitation contained a firm offer of credit include whether: 1) "it was not clear that credit approval was guaranteed," 2) "the precise rate of credit and other material terms were not included in the solicitation," and 3) the maximum amount available for the loan "in relation to the known limitations" of the loan was included in the solicitation. *Perry v. First Nat. Bank*, 459 F.3d 816, 824 (7th Cir. 2006).

### A. Consideration of Transaction as a Whole

IndyMac argues that the firm offer of credit need only be made in the transaction between IndyMac and the consumer. IndyMac points to the language of 15 U.S.C. § 1681b(c)(1)(B)(l), which provides that the FCRA requires that the "*transaction* consists of a firm offer of credit . . . ." *Id.* (emphasis added). IndyMac argues that it only needs to make a firm offer of credit within the scope of the whole loan transaction and that the court should not focus on the initial solicitation sent in

the form of the Letter. IndyMac contends that it could make other representations after IndyMac sent the Letter in order to meet the FCRA requirements. However, such an interpretation of the law is without merit. Once a loan solicitor obtains a consumer's credit information to make the initial solicitation, the invasion of the consumer's privacy has occurred. If a loan solicitor refrains from making initial commitments to the extension of a loan, then the loan solicitor is leaving an opening to subsequently decline such a loan. *See Cole*, 389 F.3d at 725-26 (noting that "'Congress apparently believe[d] that people are more willing to reveal personal information in return for *guaranteed offers* of credit than for catalogs and sales pitches'")(emphasis added)(quoting *Trans Union Corp. v. FTC*, 267 F.3d 1138, 1143 (D.C. Cir. 2001)). Also, under IndyMac's interpretation of the law, a loan solicitor could access a consumer's credit information for a solicitation with impunity. If a consumer brought a FCRA claim against the solicitor, the solicitor need only contend that it intended to provide such information, as IndyMac contends, "in later communications" if the consumer contacted the solicitor. (MSJ R SF Par. 11). Such a result would be contrary to the purpose behind the FCRA of protecting the privacy interest of consumers. *Cole*, 389 F.3d at 726.

IndyMac fails to cite any binding precedent that supports its position and such a position is in fact contrary to the Seventh Circuit precedent regarding a "firm offer of credit." For example, in *Cole*, the Seventh Circuit solely evaluated whether the initial solicitation which consisted of a flyer, contained a firm offer of credit. 389

F.3d at 726-28. The court concluded that the pleadings showed that the flyer was "a sham made to justify access to the consumer credit reports." *Id.* at 728. The Court's focus was on whether the flyer offered the consumer any real value and the Court did not inquire as to whether the defendant had further communications with consumers beyond the initial solicitation. *See id.* (stating that the allegations in the complaint indicated that the "communication had no real value"). Likewise, in *Perry*, the Court addressed whether the defendant made a firm offer of credit. 459 F.3d at 818. The Court did not evaluate the course of dealings between the defendant and consumers regarding potential loans. Rather, the Court solely evaluated whether the initial solicitation, referred to by the court as a "credit solicitation mailing," contained a firm offer of credit. *Id.* at 818, 824-25. Thus, we do not agree that the court should consider the loan transaction as a whole in determining whether IndyMac extended a firm offer of credit at some future date.

### B. Material Terms Omitted From the Letter

Murray points out that the Letter does not contain many of the material terms for the proposed loan. The Letter does not disclose the terms of the loan being offered, or contain relevant information such as the interest rate for the loan or the amount of credit available. (MSJ R SF Par. 11). Neither does the Letter contain information concerning the repayment schedule or the fees or points that would be charged along with the loan. (MSJ R SF Par. 11). Thus, if as IndyMac contends, the

7

Letter extended a firm offer of credit, the consumer would have little idea as to what type of loan was being extended. In such a situation, IndyMac would also be free to manipulate the terms of the loan after the initial solicitation and the consumer would never know that such material terms were not anticipated when the Letter was mailed. The absence of the material terms in the Letter is one indication that no firm offer of credit was made in the Letter.

IndyMac argues that it was not required to include all the material terms of the offered loan in the Letter. However, regardless of whether this is true, the absence of such terms is one fact that can be considered in assessing whether a firm offer is being extended. *Perry*, 459 F.3d at 824-26; *See Cole*, 389 F.3d at 728 (noting that "several material terms [were] missing from the offer"). If the material terms were included in the Letter that would be an indication that IndyMac wanted the consumer to be aware of the loan that was being offered and that the offer was a firm offer of credit. The absence of the material terms and lack of clarity concerning what loan was being offered is an indication that the Letter was simply a general sales pitch advertising IndyMac's services.

### C. Statements that Negate Possibility of Offer

The text of the Letter also negates any possibility that an actual offer was being extended by IndyMac. Although the Letter tells the consumer that he is "Pre-Approved for a new home loan," further text indicates that such a statement is not

accurate. (MSJ R SF Par. 12). The Letter read as a whole, merely indicates that the consumer is "pre-approved" to apply for a loan with IndyMac in the same fashion as would, for example, any other consumer that stumbled onto IndyMac's name in a phone book or saw an advertisement in the newspaper. The mere fact that the Letter contained the word "pre-approved" does not mean it satisfied the FCRA requirements. For instance, in *Cole* the flyer in question also indicated that the consumer was "pre-approved" and the Court still concluded that there was no firm offer of credit. 389 F.3d at 722.

The Letter also includes a statement hidden away within the text discussing the copyright of the Letter that states that "[r]ates and terms [are] subject to change without notice." (MSJ R SF Par. 16). IndyMac could not have included a clearer statement that would indicate that IndyMac was not obligating itself to any specific loan. If a consumer that received the Letter made the effort to contact IndyMac, IndyMac could exercise its prerogative to "change without notice" the rates and terms of the loan negating any type of loan contemplated in the Letter. In addition, although the loan would seem to be a "done deal" based on the "pre-approved" language in the Letter, the Letter further informs the consumer that he "can apply over the phone or online, and receive loan approval in minutes, not weeks." (MSJ R SF Par. 15). Thus, the approval process had yet to begin when the Letter was sent by IndyMac. The Letter also indicates that the consumer can "choose from hundreds of affordable home loan options." (MSJ R SF Par. 15). A consumer

9

receiving the Letter thus still needed to discuss with IndyMac the loan options before a true offer would be possible. Thus, the statements included in the Letter negate the possibility that a firm offer of credit was being extended in the Letter.

### D. Whether the Letter Offered Anything of Value

Murray also argues that the Letter did not offer anything of real value to a consumer. A consumer receiving the Letter would need to take steps to apply for the loan as would a consumer that did not receive the Letter. The Letter did not promise any specific material terms for the loan or special treatment in the selection process due to the fact that the consumer was "pre-approved" for a loan. *See Cole*, 389 F.3d at 722, 728 (stating that "neither a creditor nor a debtor considers the amount of credit in a vacuum; both must know the other terms attached to that credit to determine whether it is advantageous to extend or to accept the offer" and that "[t]he terms of an offer, such as the rate of interest charged, the method of computing interest and the length of the repayment period, may be so onerous as to deprive the offer of any appreciable value"). In addition, by the time the consumer attempted to secure the loan referred to in the Letter, IndyMac may have exercised its prerogative to alter the rates and terms of the loan. IndyMac argues that the Letter has value because of evidence that shows that "[c]onsumers responded [sic], applied for, and received precisely the loans subject to the offer . . . ." (MSJ Ans. 16). However, that evidence merely shows that the Letter served as an advertisement intended to solicit

10

a response from potential customers. If the mere value to consumers of receiving the "good news" that IndyMac is in the business of extending loans to consumers is sufficient value to satisfy the FCRA, the value requirement would be meaningless. In fact, the Court in *Cole* specifically indicated a concern that if the value requirement could be deemed satisfied even by a nominal value it would "eviscerate[] the statutory purpose of protecting consumer data and privacy." *Id.* at 726.

In *Cole* the court indicated that "[f]rom the consumer's perspective, an offer of credit without value is the equivalent of an advertisement or solicitation." *Id.* at 727. IndyMac accessed consumer credit information and in the Letter initially only extended "an offer of credit without value." *Id.* Thus, the Letter was merely an advertisement. If the Letter was an advertisement it would not have justified the access to consumers' credit information because, as the Court in *Cole* noted, "[i]t is clear that Congress did not intend to allow access to consumer credit information 'for catalogs and sales pitches.'" *Id.* at 727-28 (quoting *Trans Union Corp.*, 267 F.3d at 1143)(stating also that "[i]f, after examining the entire context, the court determines that the 'offer' was a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit"). We also, note that IndyMac has pointed to evidence concerning its actual loan products and approval process, but such evidence does not create a genuinely disputed fact concerning whether the Letter contained a firm offer of credit. Therefore, when

11

considering "the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question," no reasonable trier of fact could conclude that the Letter contained a firm offer of credit. *Cole*, 389 F.3d at 727-28(emphasis in original). We thus grant Murray's motion for summary judgment on the FCRA claim based upon a violation 15 U.S.C. § 1681b(c)(1)(B)(I) and we deny IndyMac's motion for summary judgment on that claim.

## II. Clear and Conspicuous Disclosures

Murray also argues that the Letter did not make clear and conspicuous disclosures as is required under the FCRA. Under the FCRA, a party that utilizes a credit report of a consumer in order to make a firm offer of credit in accordance with 15 U.S.C. § 1681b(c)(1)(B)(I) is required to "provide with each written solicitation made to the consumer regarding the transaction a clear and conspicuous statement disclosing statutorily required information." *Cole*, 389 F.3d at 729 (quoting 15 U.S.C. § 1681m(d)). The required disclosure must notify the consumer that: "(1) the recipient's consumer credit report was used in determining who should be sent the offer; (2) the consumer was selected because the consumer satisfied certain criteria; (3) the offer may not be extended if the consumer does not continue to meet the criteria bearing on creditworthiness or provide the required collateral; (4) the consumer has the right to opt out of future offers by prohibiting the unsolicited use of information contained in their consumer file; and (5) the consumer may exercise

that right by calling a specified toll-free number or by contacting the credit agency at a given address." *Id.* The obligation to make a proper disclosure is "only triggered if a valid firm offer was extended." *Id.* at 729 n.11. In determining whether a disclosure is clear and conspicuous, no one factor is determinative, but the court should consider factors such as: 1) "the location of the notice within the document," 2) "the type size used within the notice as well as the type size in comparison to the rest of the document," and 3) "whether the notice is set off in any other way-spacing, font style, all capitals, etc." *Id.* at 731 (stating that "there must be something about the way that the notice is presented in the document such that the consumer's attention will be drawn to it").

In the instant action, the Letter provides the necessary FCRA information in a disclosure ("Disclosure"). However, the Disclosure is included on the backside of the Letter at the extreme bottom of the page. (A. Compl. Ex. A)(MSJ R SF Par. 17). Thus, the location of the Disclosure is certainly not conspicuous. The type size used for the Disclosure is .75" text and is a smaller sized text than the majority of the rest of the Letter. *Cole*, 389 F.3d at 731 (noting that the disclosure at issue "fairly c[ould] be described as disproportionately small compared to the surrounding text; [and that] indeed, its size approache[d] that which c[ould not] be read with the naked eye"). The Disclosure is not set off or highlighted in a manner that would draw attention to it. Rather, the importance of the Disclosure is minimized by its location in the Letter and in light of the fact that other text in the Letter containing statements

such as that the consumer is "pre-approved" is emphasized by the inclusion of larger sized types, print in all capital letters, bolded print, underlined print, and the use of exclamation points. *Id.* (noting that in the mailer at issue "[t]he text [wa]s the smallest text on a page that [wa]s filled with larger type, as well as type that [wa]s bolded and italicized"). After the reader of the Letter satisfied his curiosity in regards to the plethora of attention grabbing gimmicks on the front and back of the Letter, the reader would have little incentive to attempt to read the barely legible fine print at the bottom of the backside of the Letter that contained the Disclosure. *Id.* (stating that the disclosure at issue "d[id] nothing to draw the reader's attention to th[e] material; [and that] to the contrary, the flyer appear[ed] to be designed to ensure minimal attention by the reader"). Thus, no reasonable jury could conclude that the Disclosure was presented in a manner "such that the consumer's attention will be drawn to it." *Id.* at 731.

In addition, the Disclosure is not clear. For example, the Letter indicates in the Disclosure that the loan was extended based upon "certain criteria" and that "specific criteria" will be used to determine if the consumer is eligible for a loan, but the Letter does not explain what are the "certain criteria" or "specific criteria" that are considered. (A. Compl. Ex. A)(MSJ R SF Par. 17). Thus, no reasonable trier of fact could conclude that the Disclosure was made in a clear and conspicuous manner. Therefore, we grant Murray's motion for summary judgment on the FCRA claim based upon a violation of 15 U.S.C. § 1681m(d) and deny IndyMac's motion for

summary judgment on that claim.

III. Willful Violation

Murray contends that IndyMac willfully violated the FCRA. In order for a party to willfully violate the FCRA, the party must "'knowingly and intentionally violate [the FCRA], and it must also be conscious that [its] act impinges on the rights of others.'" *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 610 (7th Cir. 2005)(quoting *Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004)). IndyMac argues that its employees did not know that the Letter violated the FCRA when the Letter was mailed and that IndyMac had procedures in place to make sure that it complied with FCRA requirements. In support of its position, IndyMac has submitted declarations by certain employees and points to deposition testimony that indicates for example that "IndyMac takes its compliance obligations very seriously." (M SJ SAF Par. 8). Murray argues that IndyMac knew that the Letter violated the FCRA, stating that IndyMac's employees "were on notice of the existence of the FCRA" and the disclosure duties under the FCRA. (MSJ Reply 6). However, mere notice of the existence of the FCRA and its disclosure obligations would not necessarily prove that IndyMac's employees knew that the Letter violated the FCRA. Murray concedes that IndyMac had procedures in place to avoid violations of the FCRA, but Murray argues that the procedures that IndyMac had in place were inadequate and that the "circumstances rise above mere

15

negligence . . . ." (MSJ R SAF Par. 20)(MSJ Reply 6). We do not agree that the evidence in this case conclusively shows that IndyMac employees realized that the Letter violated the FCRA. If the procedures were deficient, there is not sufficient evidence to conclude as a matter of law that it resulted from anything more than negligence. Whether the inadequacy of the efforts taken by IndyMac to ensure that it did not violate the FCRA showed a willful violation of the FCRA is a matter that must be decided by the trier of fact. Also, to the extent that Murray seeks to challenge the veracity of the declarations and depositions of the IndyMac employees concerning their knowledge of FCRA violations, such credibility determinations can only be made by the trier of fact. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)(stating that "[a]t summary judgment, 'a court may not make credibility determinations").

We also note that the on November 19, 2004, in *Cole*, the Seventh Circuit offered certain clarifications regarding the FCRA requirements and Murray acknowledges that he received the Letter in October 2004, which was before the ruling in *Cole*. (A. Compl. Par. 6). This would mean that IndyMac was not aware of the clarifications in *Cole*. Murray contends that IndyMac had sufficient guidance from other law prior to *Cole*. While that is an argument that Murray can make to the trier of fact we cannot weigh the evidence presented by Murray against evidence presented by IndyMac for the purpose of the instant motion. *See Paz*, 464 F.3d at 664 (quoting *Payne*, 337 F.3d at 770 for proposition that "[a]t summary judgment, 'a

court may not . . . weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder'"). Murray himself acknowledges the relevance and importance of the decision in *Cole* and cites the holding repeatedly in his briefs. The evidence in this case is not such that we can conclude as a matter of law that IndyMac knew it was violating the FCRA or that its prevention efforts were so lax to make it obvious that IndyMac intentionally and deliberately violated the FCRA. Therefore, we deny Murray's motion for summary judgment on the issue of willful infringement.

IndyMac argues in its motion for summary judgment on willfulness that the undisputed evidence shows that it did not know that it was violating the FCRA. However, as is indicated above, the veracity of the declarations and deposition testimony of IndyMac's employees is a matter that can only be addressed by the trier of fact. Also, the evidence negating a finding of willfulness must be weighed by the trier of fact and compared to the evidence indicating willfulness. IndyMac has not pointed to sufficient evidence that conclusively shows that it did not willfully violate the FCRA and therefore, we deny IndyMac's motion for summary judgment on the issue of willfulness as well.

## CONCLUSION

Based on the foregoing analysis, we grant Murray's motion for summary judgment on the FCRA claim based upon a violation of 15 U.S.C. § 1681b(c)(1)(B)(I) and we deny IndyMac's motion for summary judgment on that claim. We also grant Murray's motion for summary judgment on the FCRA claim based upon a violation of 15 U.S.C. § 1681m(d) and deny IndyMac's motion for summary judgment on that claim. Finally, we deny both Murray's motion for summary judgment and IndyMac's motion for summary judgment on the issue of willfulness.

_Samuel Der-Yeghiayan_
Samuel Der-Yeghiayan
United States District Court Judge

Dated: November 7, 2006